NBLJKASC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                      23 Cr. 527 (JLR)

ABRAHIM KASSIM,

                                        Conference
            Defendant.

------------------------------x

                                        New York, N.Y.
                                        November 21, 2023
                                        10:30 a.m.


Before:

                HON. JENNIFER L. ROCHON,

                                        District Judge

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
JACLYN DELLIGATTI
     Assistant United States Attorney

LAZZARO LAW FIRM, P.C.
     Attorneys for Defendant
BY:  LANCE LAZZARO

NBLJKASC

(Case called)

THE DEPUTY CLERK:  Counsel, please state your name for the record.

MS. DELLIGATTI:  Good morning, your Honor.

Jackie Delligatti for the government.

THE COURT:  Good morning, Ms. Delligatti.

MR. LAZZARO:  Lance Lazzaro for Mr. Kassim, who's to my right.

Good morning, your Honor.

THE COURT:  Good morning.  And good morning, Mr. Kassim.

Okay.  Ms. Delligatti, I understand that Mr. Kassim has been arraigned already; is that correct?

MS. DELLIGATTI:  That's correct, your Honor, yes.

THE COURT:  Okay.  So could you give me a little bit of an update on where we are in this case in terms of progress and discovery.

MS. DELLIGATTI:  Yes, your Honor.

THE COURT:  You can tell me a little about the case, too, if you would.

MS. DELLIGATTI:  Sure, your Honor.  So as alleged in the indictment, the defendant engaged in a scheme from approximately 2019 through 2022 to fraudulently obtain money from the U.S. Department of Agriculture's SNAP Benefits program.  SNAP is a program that provides low income

NBLJKASC

individuals with a card that subsidizes their purchase of groceries and other eligible items at bodegas, grocery stores, supermarkets, and things like that.

As part of the scheme and as alleged in the indictment, the defendant, who owns several small bodegas in the Bronx, instructed employees at his bodega — there's one that is the subject of the indictment, although he owns others — to fraudulently debit customers' SNAP or EBT debit cards for cash and other items that the program does not permit those benefits to be exchanged for, so primarily things like cigarettes is what is typically done throughout the scheme.

The United States Department of Agriculture analyzed the amount of money that the deli or the bodega was receiving from the U.S. Department of Agriculture during this time period. It received over $3.5 million, which is orders of magnitude higher than what a typical bodega in the Bronx received during that same time period for its participation in the SNAP program. That, as is generally, was indicative to special agents at the Department of Agriculture of fraud and of misappropriation of those benefits.

As alleged, the defendant controlled a bank account in which the money from the USDA was deposited and then used that money for his own personal benefit and to pay expenses relating to his operation of this deli.

THE COURT:  Thank you.

NBLJKASC

MS. DELLIGATTI:  The defendant was indicted on October 18 of 2023, but had been out of the country and so was arrested on November 9, which is the day he returned to the country from Egypt.  He was presented and arraigned that same day.  Judge Netburn entered a Rule 5(f) order which the government intends to follow.  Discovery in this case consists of --

THE COURT:  Before you get to discovery, do you anticipate adding any other defendants or superseding indictments or anything like that or additional charges?

MS. DELLIGATTI:  I don't anticipate adding defendants, your Honor.  I think there is some possibility of additional charges, but I can't say for certain yet.  Of course, we always continue to investigate, so I would say there is some possibility of superseding, yes.

THE COURT:  Thank you.  Talk about discovery, please.

MS. DELLIGATTI:  The discovery consists primarily of audio and video recorded transactions in which a confidential informant who was working for the USDA went into the deli and was permitted to exchange her SNAP benefits card for cash and other ineligible items.  It also consists of records from the United States Department of Agriculture relating to the amount of money that was received by the deli, the amount of money that was redeemed in SNAP transactions throughout the period charged in the indictment, as well as analysis from the USDA

NBLJKASC

that compares the redemption of money received at this particular store versus other comparable stores in the area, which is one way in which, again, the Department of Agriculture typically determines whether it believes a store to be engaging in SNAP Benefits fraud, by comparing his redemptions to other stores that are similarly situated.

THE COURT:  Is there more than one transaction with the confidential informant?

MS. DELLIGATTI:  There are several your Honor.  I believe there are five or six.

THE COURT:  Thank you.

MS. DELLIGATTI:  Discovery also consists of financial records relating to a bank account that was controlled by the defendant showing the money from this government program was deposited into that account throughout the course of several years and was then taken out of that account by the defendant and only the defendant, again, for personal benefit and for use to pay expenses relating to his ownership of this deli.  So nothing particularly voluminous, your Honor.

Although I should say the defendant's phone was seized at the time of his arrest, and agents are in the process of searching that phone.  So everything is ready to be produced now, with the exception of the phone, which is probably going to be ready to be produced, I would say in the next few weeks, assuming they're able to get into the phone.  Although

NBLJKASC

sometimes they can't initially, and then we get into it much later and produce it later on.  But in terms of what's ready now, I think the government can produce it all within two weeks.

THE COURT:  Okay.  So the substantial discovery, other than the phone, would be by December 5; is that right, Ms. Delligatti?

MS. DELLIGATTI:  That's right, your Honor.

THE COURT:  Thank you.  Okay.  All right.  Thank you very much.

Mr. Lazzaro, would you like to look over the discovery, talk to your client, and then come back for a conference and we can talk about next steps?  Or do you want to set a motion schedule and trial date now?

MR. LAZZARO:  I'd like to go through the discovery first, go over it with my client and set a status update, not to schedule motions at this time.

THE COURT:  Okay.  All right.  We can do that.  How much time will you need, assuming that you get the discovery on December 5?

MR. LAZZARO:  I would say approximately two months to go through it.

THE COURT:  Okay.  All right.  So let's get us a date, then, 60 days after the production of discovery from my deputy, which I will get now for a status conference.  And while she is

NBLJKASC

getting me that information, again, I know that the magistrate judge entered a 5(f) order, but I want Mr. Kassim to hear me also tell the government that they are obligated under 5(f) to disclose to the defense all information, whether admissible or not, that's favorable to the defendant, material either to guilt or to punishment, and known to the prosecution pursuant to *Brady v. Maryland*, and the government has to make good-faith efforts to disclose information to the defense as soon as reasonably possible, and failure to do so may result in any number of consequences, including a continuance, sanctions, dismissal, or vacatur of the conviction.

Ms. Delligatti, do you confirm again that you understand your obligations and have either fulfilled them or will fulfill them?

MS. DELLIGATTI:  We do, your Honor.  We understand them and intend to fulfill them.

THE COURT:  Thank you very much.

Let's set down our next status conference, then, for February 8 at 12:30 p.m.  Mr. Lazzaro, will that work for you?

MR. LAZZARO:  Yes, your Honor.

THE COURT:  Okay.  And Ms. Delligatti?

MS. DELLIGATTI:  Yes, your Honor, that works.

THE COURT:  Okay.  So February 8 at 12:30, and that will be our next conference.  Hopefully that gives you plenty of time to look through the discovery.  And hopefully, as well,

NBLJKASC

you'll have the telephone records, as well, because Ms. Delligatti, you'll produce those as soon as they are available; is that correct?

MS. DELLIGATTI:  Yes, your Honor.

THE DEFENDANT:  Okay, good.  Ms. Delligatti, anything else we should cover today?

MS. DELLIGATTI:  No, your Honor.  But the government moves to exclude time through February 8, the date of the next conference, to allow the defendant to begin producing discovery to defense counsel and to allow defense counsel to begin reviewing that discovery and potentially for the parties to discuss some sort of disposition of this case.

THE COURT:  Thank you.  Mr. Lazzaro, your position on that?

MR. LAZZARO:  No objection.

THE COURT:  Thank you.  Okay.  I will exclude time under the Speedy Trial Act from today until February 8.  I find that the ends of justice served by excluding such time outweigh the interests of the public and the defendant in a speedy trial because of the need for time for the government to produce the discovery, for the defendant to receive the discovery, review it, discuss with his lawyer, and prepare for next steps or a potential disposition of this case.

Is there anything else, Ms. Delligatti, we should discuss today?

NBLJKASC

MS. DELLIGATTI:  No, your Honor.  Thank you.

THE COURT:  Thank you.

Mr. Lazzaro, anything else we should talk about here today?

MR. LAZZARO:  No, your Honor.

THE COURT:  Okay.  Thank you very much.  All right.  Well, then, I will next see you on February 8.

I encourage the government to get their discovery produced as soon as possible, but, again, by December 5, which is the deadline for all discovery, other than the telephone records which should come as soon as they're available.

It was a pleasure meeting all of you.  Take care and have a happy Thanksgiving.  Court is adjourned.

(Adjourned)