O5G4KASP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                          23 Cr. 527 (JLR)

ABRAHIM KASSIM,

                                       Plea
           Defendant.

------------------------------x

                                    New York, N.Y.
                                    May 16, 2024
                                    12:25 p.m.

Before:

                HON. JENNIFER L. ROCHON,

                           District Judge

                    APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
REBECCA DELFINER
    Assistant United States Attorney

LANCE LAZZARO
    Attorney for Defendant

O5G4KASP

(Case called)

MS. DELFINER:  Good afternoon, your Honor.  Rebecca Delfiner for the government.

MR. LAZZARO:  Good afternoon, your Honor.  Lance Lazzar for Mr. Kassim, who is to my right.

THE COURT:  Good afternoon.

Is it Kassim or Kassim?

THE DEFENDANT:  Kassim.

THE COURT:  Kassim, thank you.

Okay.  I understand that we are here for a change of plea hearing.  Is that correct, to your understanding Ms. Delfiner?

MS. DELFINER:  Yes, your Honor.

THE COURT:  And Mr. Lazzaro?

MR. LAZZARO:  Yes, your Honor.

THE COURT:  May I speak to your client directly, Mr. Lazzaro?

MR. LAZZARO:  Yes.

THE COURT:  Mr. Kassim, I have been informed -- and you may sit, that's fine.  You can sit.

I've been informed that you wish to plead guilty to Count One of the indictment.  Is that correct, sir?

THE DEFENDANT:  Yes.

THE COURT:  All right.  You can move the microphone a little bit more close to you.  There is two of them.

O5G4KASP

Before I accept any guilty plea, I'm going to ask you certain questions.  I'm going to ask you those questions so that I can establish, to my satisfaction, that you wish to plead guilty because you are guilty and not for some other reason and to establish that you know the things that you will be giving up if you are to plead guilty.

If you don't understand any of my questions or want to talk to your lawyer at any time for any reason, just let me know, and I'll give you as much time as you need because it is very important that you understand my question before you answer it.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  All right.  I will ask my deputy to please swear you in.  You may stand.

(Defendant sworn)

THE COURT:  Please be seated.

You are now under oath, Mr. Kassim, which means that if you answer any of my questions falsely, you may be prosecuted for a separate crime of perjury.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Sir, what is your full name?

THE DEFENDANT:  Abrahim Kassim.

THE COURT:  And how old are you?

O5G4KASP

THE DEFENDANT:  37.

THE COURT:  How far did you go in school?

THE DEFENDANT:  High school.

THE COURT:  And what school did you attend?

THE DEFENDANT:  It's back home.  It's not in America.

THE COURT:  What's the name of the school?

THE DEFENDANT:  Alia Menia [ph.] High School.

THE COURT:  And what types of jobs have you had in the past?

THE DEFENDANT:  All deli, same business, delis.

THE COURT:  Have you ever been treated or hospitalized for any mental illness?

THE DEFENDANT:  No.

THE COURT:  Are you now or have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT:  No, I'm not a doctor.

THE COURT:  Have you ever been cared for by a doctor or psychiatrist?

THE DEFENDANT:  No.

THE COURT:  Have you ever been treated or hospitalized for any kind of addiction, whether it's drug addiction or alcohol addiction or other addictions?

THE DEFENDANT:  No.

THE COURT:  Have you taken any drugs, medicine, or pills or drank any alcoholic beverages in the past two days?

O5G4KASP

THE DEFENDANT:  No.

THE COURT:  No, okay.

Is your mind clear today?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand what's happening here today?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lazzaro, have you discussed this matter with your client?

MR. LAZZARO:  I have.

THE COURT:  And do you believe that he understands the rights that he would be waiving by pleading guilty?

MR. LAZZARO:  He does.

THE COURT:  And do you believe that he is capable of understanding the nature of the proceeding here today?

MR. LAZZARO:  I do.

THE COURT:  Do you have any doubt as to his competence to plead at this time?

MR. LAZZARO:  None.

THE COURT:  Ms. Delfiner, do you have any doubt as to Mr. Kassim's competence to plead at this time?

MS. DELFINER:  No, your Honor.

THE COURT:  Thank you.

On the basis of Mr. Kassim's responses to my questions, my observations of his demeanor here in court, and

O5G4KASP

the representations of counsel, I find that Mr. Kassim is fully competent to enter an informed plea of guilty at this time.

Mr. Kassim, have you received a copy of the indictment that has the charges against you?

THE DEFENDANT:  Yes.

THE COURT:  And did you read it?

THE DEFENDANT:  Yes.

THE COURT:  Would you like me to read it out loud, or do you waive that public reading?

THE DEFENDANT:  No.

THE COURT:  You don't need me to read it out loud?

THE DEFENDANT:  No.

THE COURT:  Have you had enough of a chance to discuss with your lawyer, the charge that you intend to plead guilty to and any possible defenses that you may have to that charge?

THE DEFENDANT:  Yes.

THE COURT:  Has your lawyer explained to you the consequences or what it means to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with your lawyer's representation?

THE DEFENDANT:  Yes.

THE COURT:  I'm now going to go over and explain certain constitutional rights that you have.  These are rights that you would be giving up if you were to plead guilty.  So

O5G4KASP

please listen carefully as I go over these items, and if you don't understand something, just stop me, and I will either give you more explanation, or you can talk to your lawyer and get more explanation.  We'll do whatever you need so that you understand the questions.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Under the constitution and the laws of the United States, you have the right to plead not guilty to the charges in the indictment.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  And if you were to plead not guilty, you would be entitled to a speedy and a public trial by a jury on the charges that are contained in the indictment.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  And at the trial, you would be presumed to be innocent, and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  A jury of 12 people sitting in a jury box like this would have to agree unanimously that you were guilty,

O5G4KASP

and you would not have to prove that you were innocent if you were to go to trial.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And at the trial, and at every stage of your case, you would be entitled to be represented by a lawyer. And if you couldn't afford a lawyer, one would be appointed to you free of cost to you in order to represent you.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, during the trial the witnesses for the government would have to come into court and they would have to testify in your presence, meaning before you.  And your lawyer could cross-examine the witnesses for the government and object to evidence offered by the government and offer evidence on your behalf if you wish to.  And you would have the right to have subpoenas issued and other process used in order to compel or require witnesses to come into court and testify on your behalf.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And at trial, although you would have the right to testify, if you chose to testify, you would also have the absolute right not to testify if you decided not to testify.  And no one, including the jury, could draw any

O5G4KASP

inference or suggestion of guilt from the fact that you did not testify.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Had you had a full opportunity to discuss with your lawyer whether there is a basis to seek suppression of some or all of the evidence against you on the grounds that your constitutional rights were violated?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if you were to plead guilty, you would be giving up your right to seek suppression of the evidence against you?

THE DEFENDANT:  Yes.

THE COURT:  And if you were convicted after a trial, you would have the right to appeal the verdict.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Now, if you plead guilty, you will also have to give up your right not to incriminate yourself. Because I will Island be asking you questions about what you did in order to satisfy myself that you are guilty as charged. And you will have to admit and acknowledge your guilt.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So if you plead guilty and if I accept

O5G4KASP

your plea, you will give up your right to a trial and all of those other rights that I've just discussed other than the right to a lawyer which you have regardless of whether you plead guilty or don't plead guilty.  But there would be no trial and I will enter a judgment of guilty, and I will sentence you on the basis of your plea after I've considered a presentence report and whatever submissions that I get from your lawyer and from the government.  And there will be no appeal with respect to whether the government could use the evidence it has against you, or with respect to whether you did or did not commit these crimes.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Now, even as we've gone through all this, you have the right to change your mind and plead not guilty and go to trial on the charges in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand each be every one of those rights that I've just gone over with you?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Kassim, are you willing to give up your right to trial and those other rights I've just discussed with you and proceed with this plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that are you charged

O5G4KASP

with a three-count indictment, conspiracy to commit theft of government funds, the substantive crime of theft of government funds, and misappropriation of USDA benefits to which you reached, as I understand it, an agreement with the government to plead guilty to the first count of conspiracy.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Delfiner, would you please state the elements of the offense in question.

MS. DELFINER:  Yes, your Honor.

The elements of the conspiracy charge are first, that two or more persons entered into an unlawful agreement to, in this case, commit theft of government funds and to misappropriate USDA benefits.

Second, that the defendant knowingly and willfully became a member of that conspiracy.

Third, one of the members of the conspiracy knowingly committed at least one of the overt acts charged in indictment.

And fourth, those overt acts were committed to further some objective of the conspiracy.  Here, the overt acts charged in the indictment are four instances in which the deli cashiers exchanged SNAP benefits for cash and permissible items.

The elements of the two objects of this conspiracy are:  First, theft of government funds, element one the money or property described in the indictment, that is the SNAP

O5G4KASP

benefits belonged to the federal government.

Second, the defendant stole, embezzled or knowingly converted that property.

Third, the defendant acted knowingly and willfully with the intent to deprive the government of the use and benefit of its property.

And fourth, the value of the property is greater than $1,000.

The elements of misappropriation of USDA benefits objects are:  First, the defendant acquired, used, transferred, altered, or possessed SNAP benefits in a manner not authorized by law or USDA regulations.

Second, the defendant knew he was not acting in a manner not authorized by law or USDA or regulations.

And third, that the value of the SNAP benefits that the defendant acquired was at least $5,000.

THE COURT:  Thank you.

Mr. Kassim, it do you understand that if you were to go to trial, the government would have to prove all of those elements that they've just described beyond a reasonable doubt? Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, I'm going to go over the maximum possible penalty for the crime in which you intend to plead guilty, which is Count One.  The maximum means the most that

O5G4KASP

could possibly be imposed.  It does not mean that that is what you necessarily will receive.  But you do have to understand that by pleading guilty, you are exposing yourself to the possibility of receiving any combination of punishments up to the maximum that I'm about to describe.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So let me first talk about the potential restrictions on your liberty.  The maximum term of imprisonment for the conspiracy in Count One is five years in prison, which could be followed up by up to three years of supervised release.

Supervised release means that you'll be subject to the supervision of the probation office.  There will be rules of supervised release that you will have to follow, and if you violate any of those rules, you could be returned to prison without a jury trial to serve additional time with no credit for time that you served in prison as a result of your sentence and no credit for any time spent on post-release supervision.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  One moment.  You should also understand that there is no parole in the federal system.  If you are sentenced to prison, you won't be released early on parole.  There is an opportunity -- a limited opportunity -- to earn

O5G4KASP

credit for good time and good behavior, but you will have to serve at least 85 percent of the time that you are sentenced to in order to be eligible for that.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In addition to those restrictions on your liberty, the maximum possible punishment also includes certain financial penalties.  The maximum allowable fine is $250,000 or twice the gross pecuniary gain or twice the gross pecuniary loss to persons other than yourself, whichever is greater.

In addition I must order restitution to any person other entity injured as a result of your criminal conduct, which here the government has calculated at $951,915.21.

Is that accurate, Ms. Delfiner?

MS. DELFINER:  Just confirming, your Honor.

Yes, your Honor.  Thank you.

THE COURT:  I can also order you, Mr. Kassim to forfeit all property derived from the offense or used to facilitate the offense.  And finally, I must also order a mandatory special assessment of $100 per count of conviction. Do you understand these are the possible maximum penalties?

THE DEFENDANT:  Yes.

THE COURT:  Are you a United States citizen?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that as a result of the guilty plea, if you were to plead guilty you would lose certain

O5G4KASP

valuable civil rights to the extent you would have them or could otherwise obtain them now, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of a firearm.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Are you serving any other sentence, state or federal or being prosecuted in state court for any crime?

THE DEFENDANT:  No.

THE COURT:  Do you understand that if your lawyer or anyone else has attempted to predict what your sentence definitely will be, that their prediction could be wrong?

THE DEFENDANT:  Yes.

THE COURT:  That's because no one, not your lawyer, not the government, nobody can give you any assurance of what your sentence will be because I'm going to decide your sentence, and I'm not going to do this right now.  I'm going to wait until I have received a presentence report prepared by probation.  And I'm going to do my own independent calculation of the sentencing guidelines.  And I'm going to consider that guidelines range and any possible departures from it and also determine what a reasonable sentence is for you, based on certain sentencing factors that I have to look at, to determine there should be any variance or whether the sentencing guidelines range is appropriate, based on factor contained in a

O5G4KASP

statute that's called 18 U.S.C. 3553(a).  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed that sentencing process, at least a little bit, with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  So even if your sentence is different from what your lawyer or anyone else has told you, and even if it's different than what you expect it will be or from what is contained, as we'll discuss in this plea agreement, you will still be bound by your plea of guilty and not be allowed to withdraw your plea of guilty.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  OK.  As I mentioned to that end, I understand that there is a written plea agreement entered into between you and your lawyer and the government for the government.  It is dated February 5, 2024, and the signatures appear to be signed by Mr. Kassim and Mr. Lazzaro on May 16, 2024.  Did you enter into that agreement, Mr. Kassim?

THE DEFENDANT:  Yes.

THE COURT:  And I have the original of that agreement here before me that I'm looking at, and I see your original signature and your lawyer's signature on this agreement.  Did you sign this agreement in the presence of your lawyer?

THE DEFENDANT:  Yes.

O5G4KASP

THE COURT:  And did you read in agreement before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  I will, after we go over this, give this original agreement back to the government, and they can keep it in their possession.

Did you talk about this agreement with your lawyer before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Did you fully understand this agreement before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Now, it's important for you to know that this agreement is binding on you and binding on the government but it is not binding on me.  I have an independent obligation to determine the correct guidelines range and the appropriate sentence in your case.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  So one of the features of your agreement with the government is that you have agreed upon a guideline's range of 30 to 37 months.  Is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Again, that agreement is binding on you, binding on the government, but it's not binding on me.  So I

O5G4KASP

have to look at the sentencing guidelines when I get that presence report in.  I'm not saying that I'm going to come up with a range that is any different than what's in this letter, but if I do, and if it is a higher range, you still will not be able to withdraw your plea of guilty.

Do you understand?

MS. DELFINER:  Yes.

THE COURT:  Now, it also states in this plea agreement that you admit to the forfeiture allegations in the indictment and agree to forfeit to the United States $951,915.21.  Do you agree to that, sir?

THE DEFENDANT:  Yes.

THE COURT:  I have a forfeiture order that has been provided to me.

Ms. Delfiner, when does that get executed?

MS. DELFINER:  I believe at sentencing, your Honor.

THE COURT:  At sentencing.  Okay.

So I will give you back this forfeiture order then.

MS. DELFINER:  Thank you, your Honor.

THE COURT:  I'll keep the copy then, and you have your own copy to get signed?

MS. DELFINER:  Yes, we do, your Honor.

THE COURT:  Perfect.  Okay.

The plea agreement also states, Mr. Kassim, that you agreed to pay restitution in the amount of $951,915.21.  Do you

O5G4KASP

agree to that, sir?

THE DEFENDANT:  Yes.

THE COURT:  Again, I have a consent order of restitution that has been provided to me for my signature.

Ms. Delfiner, when is that executed?

MS. DELFINER:  I believe that is also at sentencing, your Honor.

THE COURT:  Sure.  Thank you very much for these advanced copies.

Mr. Kassim, in your plea agreement you have waived your right to appeal or otherwise challenge any sentence that I impose to that is 30 to 37 months or below.  In other words, if I sentence you to anything less than 37 months, you would have no right to appeal or otherwise challenge that sentence by a collateral challenge.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Similarly, do you understand that are you waiving your right to appeal or bring a collateral challenge to any term of supervised release that is less than or equal to three years?

THE DEFENDANT:  Yes.

THE COURT:  And do you agree that you are agreeing not to appeal or bring a collateral challenge of any fine amount that is less than or equal to $100,000?

O5G4KASP

THE DEFENDANT:  Yes.

THE COURT:  Next, do you agree through this plea agreement not to appeal or bring a collateral challenge to any forfeiture amount that is less than or equal to $951,915.21?

THE DEFENDANT:  Yes.

THE COURT:  And any restitution amount that is less than or equal to $951,915.21?

THE DEFENDANT:  Yes.

THE COURT:  Finally, in this plea agreement you are agreeing not to appeal or bring a collateral challenge to any special assessment that is less than or equal to $100 per count of conviction.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that these appeal waivers don't include claims for ineffective assistance of counsel.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Does this written plea agreement, dated February 5, 2014, constitute your complete and total understanding of the entire agreement between you and the government?

THE DEFENDANT:  Yes.

THE COURT:  Has anything been left out of it?

O5G4KASP

THE DEFENDANT:  Yes.  No.

THE COURT:  No, okay.

Other than what's in the plea agreement, has anyone made any promise to you or offered you anything in order to get you to plead guilty or to sign this agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened you or forced you to plead guilty or to sign this agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone made a promise to you as to exactly what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  Are there any additional provisions of the plea agreement, Ms. Delfiner, that I should bring to Mr. Kassim's attention?

MS. DELFINER:  I don't believe so, your Honor.

THE COURT:  Thank you.

Anything else you think I should go over with your client, Mr. Lazzaro?

MR. LAZZARO:  No, your Honor.

THE COURT:  Thank you.

All right.  Mr. Kassim, now is the time where I would like you to tell me, in your own words, what you did that makes you believe that you are guilty of Count One of the indictment.

THE DEFENDANT:  Along with other people, I agreed to

O5G4KASP

exchange SNAP benefits with a customer in which we give them back cash and allowed them to purchase food items.  We know this was against the law.  And this occurred in between January 2019 and November 2022.  This is over in the Bronx, New York.  The value of the property we took was over a thousand.

THE COURT:  And did you participate in this agreement to commit those facts willfully?

THE DEFENDANT:  Yes.

THE COURT:  And did you do so knowingly?

THE DEFENDANT:  Yes.

THE COURT:  And did you know when you were doing this that you were doing something that was wrong and illegal?

THE DEFENDANT:  Yes.

THE COURT:  Now, I see that you are speaking from some notes, which is perfectly fine.  This is a nerve-racking procedure.  But the thoughts and statement you are speaking to me from those notes, are those your thoughts and your statements?

THE DEFENDANT:  Yes.

THE COURT:  And are they true and accurate?

THE DEFENDANT:  Yes.

THE COURT:  OK.  Ms. Delfiner, would you summarize what the government's evidence would be and what the government would prove with respect to Mr. Kassim, if Mr. Kassim were to go to trial?

MS. DELFINER:  Certainly, your Honor.  If the case went to trial, the government's evidence would include documents and testimony from the USDA indicating that for the period between January 2019 and November 2022, the total value of SNAP benefits processed by the defendants' bodega exceeded the SNAP benefits processed at comparable stores in the Bronx by more than 73 percent.  The Yella Deli redeemed over 3.5 million in SNAP benefits during that time when the average redemption for comparable stores in the area was only $280,000.

The evidence would also include audio and video recordings by a USDA confidential informant, during which the employees of Yella Deli exchanged SNAP benefits for cash and other impermissible items on at least five different occasions during that same time period.  The evidence would include testimony from a former employee of the deli, regarding the defendant's ownership and control of the deli and the fact that he directed employees to improperly redeem SNAP benefits for cash and other impermissible items.  The evidence would also include bank records indicating that the defendant personally profited from SNAP benefit money that he received from the USDA.  Specifically in or about January 2019 through in or about November 2022 at least approximately 3.5 million in SNAP benefits were deposited into the Yella Deli's bank account. And Mr. Kassim used the bank accounts to pay expenses for the deli, but also withdrew approximately $700,000 for his own use

O5G4KASP

and benefit during that time.

And finally the government's evidence would include documents and testimony regarding the fact that Mr. Kassim is in fact the true owner of the Yella Deli.

THE COURT:  Thank you very much.

Mr. Kassim, just a couple of follow up questions. First, did you hear the things that the government went over here today?

THE DEFENDANT:  Yes.

THE COURT:  And when you said you agreed with others to commit the behavior that you described, were the other individuals nongovernment employees?  They weren't any confidential informants; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  And did you direct employees to redeem SNAP benefits for items that were not appropriate for SNAP benefits?

THE DEFENDANT:  Yes.

THE COURT:  And were you the owner of the deli described?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lazzaro, do you know any valid defense that would prevail at trial or any reason why your client should not be permitted to plead guilty here today?

MR. LAZZARO:  No, your Honor.

O5G4KASP

THE COURT:  Ms. Delfiner, are there any additional questions that you would like me to ask of Mr. Kassim?

MS. DELFINER:  Your Honor, just for the record, would you mind asking Mr. Kassim if the value of the SNAP benefits was over $5,000 and not just over 1,000?

THE COURT:  Yes.

Mr. Kassim, the value of the SNAP benefits that were redeemed by you, were they more than $5,000 in value?

THE DEFENDANT:  Yes.

THE COURT:  Thank you.

Anything else, Ms. Delfiner?

MS. DELFINER:  No, thank you, your Honor.

THE COURT:  Ms. Delfiner, do you agree there is a sufficient factual predicate for a guilty plea here?

MS. DELFINER:  Yes, your Honor.

THE COURT:  Do you know of any reason I shouldn't accept Mr. Kassim's plea of guilty?

MS. DELFINER:  No, your Honor.

THE COURT:  Mr. Lazzaro, do you agree that there is a sufficient factual predicate for a plea of guilty here?

MR. LAZZARO:  I do, your Honor.

THE COURT:  Thank you.

And do you know any reason -- as I've asked you before -- now that you've heard everything, that I shouldn't accept your client's plea of guilty?

O5G4KASP

MR. LAZZARO:  No, your Honor.

THE COURT:  Mr. Kassim, just to be clear and to conclude, how do you plead to Count One of the indictment, guilty or not guilty?

THE WITNESS:  Guilty.

THE COURT:  Because you acknowledge you are, in fact, guilty as charged in Count One of the indictment and because I'm satisfied that you know your rights, including your right to go to trial, and that you are aware of the consequences and what it means to plea including the sentence which may be imposed, and because I find are you knowingly and voluntarily pleading guilty, I accept your guilty plea, and I will enter a judgment of guilty on count one of the indictment.

THE DEFENDANT:  Thank you.

THE COURT:  Thank you.

Now, the probation office is going to want to interview you in connection with that presentence report that I spoke to you about.

Mr. Lazzaro, would you like to be present with your client for any interview?

MR. LAZZARO:  Yes.

THE COURT:  I direct no interview should take place unless counsel is present.

Mr. Kassim, if you wish to talk to the probation office, make sure that anything you say and everything you say

O5G4KASP

is truthful and accurate.  Because I'm going to read that report very carefully.  And it's an important document to me in deciding what sentence to impose.  Now, you and your lawyer are going to have the time to look over that report and to comment on it at the time of sentencing.  Even before sentencing, you will have that report, and I urge you to look at it very carefully.  And if there are any mistakes in it, at all, anything that needs to change, point them out so your lawyer so they can be brought to my attention and to the probation office's attention before sentencing.

Let's get a sentencing date on the calendar, one moment.

How about August 29 at 10:00 a.m.  Would that work, Mr. Lazzaro?

MR. LAZZARO:  Judge, is it possible could I get a September date, or is that too far?

THE COURT:  That's fine.  Let's see.  How about September 5 at 11:00 a.m?

MR. LAZZARO:  Perfect.

THE COURT:  I'm going to direct the government to provide probation with its factual statement within seven days of today.

Defense counsel must arrange for Mr. Kassim to be interviewed by the probation office within the next two weeks. I'll ask both sides to please look at my individual rules for

O5G4KASP

criminal cases, as to when to send in your sentencing submissions. And that timing is set forth in those individual rules. I have the orders, I believe for forfeiture and restitution, but you will execute whatever needs to be executed in advance and bring those to sentencing.

Will there be any victims who will be speaking at sentencing, Ms. Delfiner?

MS. DELFINER: I don't expect so, your Honor.

THE COURT: But they have been notified?

MS. DELFINER: They have, yes.

THE COURT: Okay. Good.

Anything further we need to discuss before we close, Ms. Delfiner?

MS. DELFINER: No, thank you, your Honor.

THE COURT: Mr. Lazzaro?

MR. LAZZARO: No, your Honor.

THE COURT: I just want to say the conditions of detention will continue. And Mr. Kassim, I want you to know that the same conditions apply prior to guilty plea that apply now, and that if you violate any of the conditions of your release, there can be very serious consequences.

One of the big things I want to impart on you is that you must be here in the courtroom for sentencing at the time and date that you accept, or there is a whole other separate crime for bail jumping and you'll be subject to all sorts of

O5G4KASP

penalties there.  So we are allowing you to stay out before sentencing on the understanding that all the conditions apply and there will be very series consequences if you don't show up for sentencing on September 5.

Do you understand?

THE DEFENDANT:  I understand.

THE COURT:  Good.

Thank you all very much.  We are adjourned for the day.  Thank you.

(Adjourned)