P16LKasS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                          23 Cr. 527 (JLR)

ABRAHIM KASSIM,

         Defendant.

                                Sentence
------------------------------x

                                New York, N.Y.
                                January 6, 2025
                                1:00 p.m.

Before:

                HON. JENNIFER L. ROCHON,

                              District Judge

                  APPEARANCES

EDWARD Y. KIM
     Acting United States Attorney for the
     Southern District of New York
BY:  JACLYN DELLIGATTI
     Assistant United States Attorney

LANCE LAZZARO
     Attorney for Defendant

P16LKasS

(Case called)

MS. DELLIGATTI:  Good afternoon, your Honor.  Jaclyn Delligatti for the government.

THE COURT:  Good afternoon.

MR. LAZZARO:  Lance Lazzaro for Mr. Kassim.  Good afternoon, your Honor.  Mr. Kassim is to my right.

THE DEFENDANT:  Hi.  Mr. Kassim.  Good morning.

THE COURT:  Good afternoon, Mr. Kassim.  And good afternoon, Mr. Lazzaro.  Please be seated.

OK.  We are here for a sentencing for Mr. Kassim.  So let me go through exactly how we are going to proceed today.

First, I am going to go over the materials that I have received and deal with the presentence report that I received from the probation department.

Then I will review the sentencing guidelines calculations which are some technical calculations that I must find at sentencing to establish a guidelines range for sentencing.

Then I am going to hear comments from the government about sentencing.  Then I will hear any comments from defense counsel, and then I will hear from Mr. Kassim if he wishes to be heard.

Then I will review any departures or variances from the guidelines, and I will review the sentencing factors that I must consider in imposing a sentence that is sufficient but not

P16LKasS

greater than necessary to achieve the goals of sentencing.  And then finally, I will impose the sentence.  So that's how we are going to proceed this afternoon.

In terms of documents, I have the following documents: I have a letter submission from defense counsel dated December 20, 2024, along with several exhibits to the sentencing memorandum.  Those exhibits included many letters, many letters, and I will tell you that I read every single one of them very closely.  They include letters from police officers who described how Mr. Kassim helped law enforcement keep the community safe.  I read letters from community members.  I read about his volunteer work.  I read the letter from his wife, Naseem Assaedi, who spoke of how Mr. Kassim is a good husband, father, and son, and his intense work ethic.  I read the letters from his mother and other family members, and I reviewed the medical records.  I also have a supplemental letter sent in by defense counsel on January 2, 2025, with some medical information about his son.

I want to thank anybody here in the gallery who sent in letters.  As I said, I read all of them, and they are very important in my consideration.

I have also received the following documents from the government:  I have a sentencing submission dated December 28, 2024, and I have a final presentence report dated August 7, 2024, from probation.

P16LKasS

All right.  Ms. Delligatti, have you received all the documents that I have listed?

MS. DELLIGATTI:  I have, your Honor.  Yes.

THE COURT:  And are there any other documents or materials that I should be considering here today?

MS. DELLIGATTI:  No, your Honor.  Although, I will just note, I handed up signed preliminary -- excuse me, final orders of forfeiture and restitution to your deputy just shortly before sentencing began.

THE COURT:  Oh, yes, I do have that.  So I have a consent order of restitution, and I have a consent preliminary order of forfeiture money judgment.

MS. DELLIGATTI:  That's right, your Honor.  Yes.  And that's all.

THE COURT:  Thank you very much.

Mr. Lazzaro, have you received all the documents that I have just gone over here today?

MR. LAZZARO:  I have.

THE COURT:  And are there any other documents or materials I should be considering here today?

MR. LAZZARO:  No, your Honor.

THE COURT:  Thank you very much.

All right.  Are there any victims present in the courtroom to be making a statement here today, Ms. Delligatti?

MS. DELLIGATTI:  There are not, your Honor.  No.

P16LKasS

THE COURT:  Thank you.

All right.  Mr. Lazzaro, have you read the PSR and discussed it with your client?

MR. LAZZARO:  I have, your Honor.

THE COURT:  May I address your client directly?

MR. LAZZARO:  Absolutely.

THE COURT:  Thank you.  Mr. Kassim --

THE DEFENDANT:  Kassim.

THE COURT:  Kassim.  Thank you.

Mr. Kassim, have you read the presentence report from the probation department?

THE DEFENDANT:  Yes.

THE COURT:  And have you had an opportunity to talk to your lawyer about that presentence report?

THE DEFENDANT:  Yes.

THE COURT:  OK.  Thank you very much.

All right.  Let me start with that presentence report. I see on page 24 to the report that there are no objections by the government and no objections by the defendant.  Let me just confirm that.

Ms. Delligatti, are there any objections to the presentence report?

MS. DELLIGATTI:  No, your Honor.

THE COURT:  And Mr. Lazzaro, any objections to the presentence report?

MR. LAZZARO:  No, your Honor.

THE COURT:  Thank you.

Without objection, the Court will adopt the presentence report and the factual findings therein, and it will be made part of the record in this matter and placed under seal.  If an appeal is taken, counsel on appeal may have access to the sealed report without further application to this Court.

I am now going to go through the guidelines calculations.  Some of this, as I said, sounds very technical, but it's important for me to review the various specific provisions of the guidelines as part of the sentencing process.

Defendant, Mr. Kassim, pled guilty to Count One of the indictment for conspiracy to commit theft of government funds and misappropriate USDA benefits under 18 U.S.C. 371, 18 U.S.C. 641, and 18 U.S.C. 2.

The presentence report reflects an offense level of 19 and a Criminal History Category of I.  The parties stipulated to this offense level and criminal history category as part of the plea agreement.  I will note that even though there is an additional criminal history point that was not captured in the plea agreement, the Criminal History Category remains a I, notwithstanding inclusion of that point.

I have reviewed the PSR, and I now calculate and find the following:

The defendant's base offense level is 6 because the

P16LKasS

substantive theft offense has a maximum term of imprisonment of not more than 20 years under 2X1.1(a) and 2B1.1(a)(2).  Then 14 points are added because Mr. Kassim is responsible for actual loss of $951,915.21, which is more than 500,000 and less than 1.5 million.  This is pursuant to 2B1.1(b)(1)(H).

And Mr. Kassim agrees to this loss amount; is that correct, Mr. Lazzaro?

MR. LAZZARO:  That is correct.

THE COURT:  Thank you.

Two points are added because of Mr. Kassim's role in the offense as an organizer, leader, manager, or supervisor in any criminal activity other than that described in subsection (a) or (b) of 3B1.1 according to 3B1.1(c).  This leads to an offense level of 22.  Mr. Kassim has accepted responsibility and has timely pled, so three points are subtracted under 3E1.1(a) and 3E1.1(b).  Therefore, the total offense level is 19.

Mr. Kassim's Criminal History Category is I.  He has one criminal history point which the parties did not reflect in the plea agreement, but which applies here.  Even though he committed the present crime while on probation, which is troubling, and we will get to that later, he did not have 7 or more criminal history points, so an additional point is not added under 4A1.1(e).  And, therefore, the Criminal History Category is I, regardless of whether there is one or zero

P16LKasS

points.  And this produces an advisory guidelines range of 30 to 37 months in prison.

Are there any additional guidelines arguments that I have not addressed or any objections to the guidelines calculation, Ms. Delligatti?

MS. DELLIGATTI:  Not from the government, your Honor. No.

THE COURT:  Mr. Lazzaro?

MR. LAZZARO:  No, your Honor.

THE COURT:  Thank you.

I do not see a basis for a departure here, and the parties agreed in the plea agreement that there is no basis for a departure.

And so now I have to look at sentencing factors, and those are set forth for me in a statute called 18 U.S.C. 3553(a), to make sure that I impose a reasonable sentence.  So before I do that and go through those factors, I am going to allow the parties to make some statements.

So let me hear first from the government.

Would you like to make any final statements about sentencing here, Ms. Delligatti?

MS. DELLIGATTI:  No, your Honor.  Of course, I am happy to answer any questions the Court has, but otherwise, the government rests on its submission.  Thank you.

THE COURT:  Thank you.  I have some questions.  And I

P16LKasS

am going to be talking about this with defense counsel, but I wanted to ask you as well.

The prior conviction, conspiracy to traffic in contraband cigarettes, I understand by looking at that docket that that was a felony that could be -- for which he could have received up to five years, but instead got probation for four years, but was discharged early on February 26, 2020.

Is that correct?

MS. DELLIGATTI:  That's correct, your Honor.

THE COURT:  OK.  And talk to me a little bit about the restitution and forfeiture, which is an important part of this. And I am glad to see that that, of course, has been consented to.

So my first question is, I have an order of forfeiture, so that would mean that the defendant is going to consent to the entry of a money judgment of approximately $951,000, and then also a consent order in that same amount for restitution.  Tell me how those work together.

MS. DELLIGATTI:  Well, your Honor, I will first speak to how -- well, I guess, let me ask your Honor.  Does your Honor have any question as to how that amount was calculated, or would you like me just to speak to how they work together?

THE COURT:  How they work together.  I understand they are calculated through a formula by which there is an approximation as to the amounts that were kept by Mr. Kassim.

P16LKasS

Correct?

MS. DELLIGATTI:  That's right.  And the formula that's generally applied is, the government takes -- the government and, of course, as agreed to by defense counsel, stipulates that a certain percentage of transactions at the bodega that amounted to over $50 were fraudulent, and under that percentage, any other extra -- any other extra money that was given to the deli by the USDA is included in the forfeiture or restitution amounts.  And so basically those amounts reflect, I believe it's 60 percent of the amount of money that was charged to the USDA for transactions over $50 within the period covered by the indictment.

THE COURT:  OK.

MS. DELLIGATTI:  With respect to the amounts being the same, your Honor, as your Honor is aware, the government often seeks forfeiture and restitution at the same time.  The forfeiture amount represents the proceeds -- or represents the defendant's ill-gotten gains in this case.  The government had reason to believe, based on financial tracing, that the amount of money received by the defendant from the USDA reflected in the order was money that passed through his hands alone.  There were no other people controlling that bank account.

The government, based on its investigation, had no reason to believe that employees of the store were benefiting in any way other than the salaries that they were collecting

P16LKasS

from the defendant.  And so by the government's best information, that amount is a legitimate representation, if not a conservative one, of the amount of money that -- by which the defendant personally profited as a result of the scheme.

And, of course, with respect to restitution, your Honor, the government is a victim.  Specifically, the United States Department of Agriculture is a victim.  The government has sought restitution in the same amount based on the fact, again, that the government's formula suggests that at least that amount was stolen from the USDA based on a pattern of transactions the government observed at the defendant's deli.

THE COURT:  Thank you.

And so Mr. Kassim would be responsible for paying approximately $951,000.  He is not paying that twice, or is he paying it twice; restitution and forfeiture?

MS. DELLIGATTI:  He is paying it twice, your Honor. Yes.

THE COURT:  OK.  And in terms of the amounts that he has on hand, I was getting a little bit of conflicting information about payment plans, etc.  So, for example, when I look at the PSR, I see on page 30, the total amount of restitution is due and payable immediately.  And then I see a payment schedule and installments, etc.  So tell me how these amounts are intended to be paid.

MS. DELLIGATTI:  Your Honor, the amount is intended to

P16LKasS

be paid in installments, and so I'm sorry I didn't see that in the PSR.  That is an error.  Generally the government requests that restitution be paid in installments.  Of course, the government always welcomes the opportunity for the defendant to pay either forfeiture or restitution in a lump sum.  I believe there is a legitimate possibility of some of that here, or at least satisfaction of a portion of the judgment on a timeline that is more accelerated than the installment timeline that's typically prescribed.  But, your Honor, here the government is seeking payment in the course of the ordinary timeline the government seeks.  It is not seeking a lump sum payment.

THE COURT:  OK.

MS. DELLIGATTI:  And that's reflected in the parties' consent order.

THE COURT:  I looked at the consent order, so let's look at that for a moment.  And on page 2 of the consent order, it says, "In the interest of justice, restitution shall be payable in installments pursuant to 18 U.S.C. Section 3572(d)(1) and (2)."  And when I look at those sections, they say the installments shall be in equal monthly payments over the period provided by the Court.

What is the period of time that's provided for here?

MS. DELLIGATTI:  Give me one moment, your Honor, because I am using an order that -- the government submits an order that is vetted by certain AUSAs in the office who handle

P16LKasS

forfeiture and restitution, so I don't want to say something --

THE COURT:  Take your time.  I just want to make sure that I am able to fill out the judgment form here in the appropriate --

MS. DELLIGATTI:  Typically, your Honor, there isn't -- and I am reading paragraph 5, Term of Liability.  The government doesn't impose a date -- the government does not impose necessarily a timeline of five or ten years by which the amount must be paid.  Typically what the government asks for and what is reflected in the consent order is that the defendant shall pay restitution for every month, and that obligation shall terminate, as reflected in paragraph 5, on the date that is the later of 20 years from the entry of the judgment or 20 years after the defendant's release from imprisonment.  And so the defendant will pay the amount prescribed in the order on a monthly basis for at least 20 years after the entry of the judgment.  At that point, if the judgment is not satisfied, then liability would, in fact -- the defendant would no longer be liable under the terms of the order, but there is no obligation to pay on any more accelerated of a timeline.

THE COURT:  What's the amount he is paying every month?

MS. DELLIGATTI:  If you look, your Honor, to -- your Honor, I apologize, because typically the order specifies a

P16LKasS

percentage, and I don't see one here.

I think what's best is if the parties submit after sentencing an order to the Court that specifies a percentage of income, and the Court could enter that order.

THE COURT:  That's fine.  One moment.

MS. DELLIGATTI:  Candidly, your Honor, my understanding, not from this case, but from others, is that often it's the BOP who determines a percentage that can be taken from the defendant's account in the event that the defendant is sentenced to a term of incarceration.  But given that I am not certain that that's what would happen in this case, I think it's best if the parties submit an amended consent order after sentencing; very shortly after sentencing.

THE COURT:  OK.

MS. DELLIGATTI:  That's right, your Honor.  I am just reading page 2.  So if you see, the second full paragraph on page 2 explains that the BOP and its staff work to determine a payment percentage schedule that is feasible, given the defendant's assets and given any money that the defendant is making either inside of incarceration or outside of incarceration.

THE COURT:  Understood.  So there may not need to be any changes made to this.

MS. DELLIGATTI:  That's right, but I will check, your Honor, and I will either submit the order as drafted currently

P16LKasS

to chambers or we will submit an amended order.

THE COURT:  The other question that I had is, on page 3 of the order it talks about sealing, and it asks to seal the schedule of victims, which is just the government.  Is that intended to remain sealed?  Because then I wouldn't be putting it on the judgment.  But why would the name of the government be sealed?

MS. DELLIGATTI:  We typically ask for sealing in every restitution order.  I think, your Honor, in this instance the government doesn't have any objection to the victim being named in the judgment or the restitution order, frankly.  And so if your Honor wishes to disregard that paragraph or even strike it, that's fine.  Given that we are likely to submit an amended order, I can remove that paragraph.

THE COURT:  That's fine.  Thank you.

MS. DELLIGATTI:  Of course, as your Honor knows, it's used when victims are private citizens.

THE COURT:  Absolutely.

MS. DELLIGATTI:  But it's not as necessary in cases where the victim is the government.

THE COURT:  Right.  Good.

OK.  My other question was, in terms of restitution, talk to me about how the government is being made whole.  I want to understand this particular scheme a bit more.  I certainly understand how this scheme harms individuals who,

P16LKasS

let's say, had $100 worth of food stamps and provided those food stamps to the defendant in exchange for $60 in cash, and the remainder of the 40-dollar differential would then go to the defendant. So that individual has lost out on $40 worth of food stamps or food items or the things that they were intended to be used for. The government has given the $100 food stamps and hasn't had to give any more than that. So tell me how this is -- the million dollars back to the government is making them whole.

MS. DELLIGATTI: I think, your Honor, you know, this is one of many different schemes in which, I think, the harm to the government, as your Honor recognizes, is a little bit different than in cases where -- in a healthcare fraud scheme, for example, a doctor is billing and getting reimbursement for a service that isn't ultimately performed, or something like that.

What I would say here, your Honor, is that this is the approach the government takes in every one of these cases on the basis that -- and, you know, this is written into the statute -- when a store like the one operated by the defendant enrolls in this program, is that there is the premise that the government would not reimburse the store for any transaction that was obtained fraudulently. And so the result of that agreement between the owner of the store and the federal government is that any request for reimbursement that is

P16LKasS

premised on a transaction that was fraudulent is, in fact, an improper request for reimbursement, so any funds that are given to the store under that premise, your Honor, are funds to which the store is not entitled.

THE COURT:  Understood.  Thank you for that.

And then finally, was any money seized such that part of the $951,000 has already been forfeited to the government?

MS. DELLIGATTI:  No, your Honor.

THE COURT:  All right.  I thank you very much.

Mr. Lazzaro, I am happy to hear from you.

MR. LAZZARO:  Your Honor, as evidenced in the reports that I have submitted, I am asking this Court, under history and characteristics, to consider a sentence outside of the guideline range.  While I recognize the serious nature of this crime, I do believe that there are other factors here, your Honor, for the Court to consider; his exceptional family circumstances.

As this Court is well aware, he's got four young children ranging in age from two to, I believe, 11.  The youngest one, which I just was made aware of, has been diagnosed with autism, which will require substantial medical care.  And as you can see from the reports, his wife really is a homemaker and takes care of the four children.  I just believe that with what the son was just diagnosed, to take the father out of that role -- and even if the Court feels that

P16LKasS

some type of jail is appropriate, I think it can accomplish that by even home confinement, if the Court wants to restrict him in some way.

That being said, you look at the numerous letters from his wife, to how he took his sister's family in when she was left, basically, with nothing, and her four children, and he took care of the four children, took care of his sister, put them up in a rental home, got them a car.  And even his nephew wrote a letter that Mr. Kassim has treated him like his own father would.  There is a substantial message coming across from everybody that's written about him, even from law enforcement, that he is a decent person and a good person.

I am not condoning what occurred here, and he's agreed to make restitution, but if you look at, even with his mother who is, you know, diagnosed with, I believe, Stage 2 or 3 breast cancer, he was really, you know -- she credits him for helping to save her as far as taking her to the medical treatments.  And you can see that his mother and father both live with him, but the father has early signs of dementia.

This is a family that really relies upon Mr. Kassim in a way that most families don't, from his own four children, to what's going to happen now with his son who is going to need tremendous medical care, to taking care of his mom, to taking care of his nieces and nephews in a way that you normally don't see in a case, and it clearly goes to his history and

P16LKasS

characteristics under 3553(a).  And while I am not condoning what occurred here in any manner, I do think that these history and characteristics -- and even probation seems to have recognized that when they recommended 12 months to your Honor as opposed to the guideline range.  I just believe, Judge -- and you can see from the audience, his entire family is here.  They support him.

And he has agreed to make substantial restitution in this case and to pay back this money.  And while he recognizes that he was wrong, I think it played a role, how much everybody was taken care of -- not condoning what occurred here, Judge, in any manner -- but played a role in what happened here.  The pandemic hit.  His financial -- whatever it was, he made mistakes and he was wrong, and he knows that, and he has significant remorse.  But I have never seen a family really rely on somebody to such an extent, from his sister, to her four children, to his own four children, to his wife, to his mom, to his dad who is suffering from Alzheimer's.  And I have never seen so many letters, Judge, that I have ever submitted in a sentencing, and I am sure you read them all, which is a common theme; how he even helps law enforcement.  Even people that got to know him in the community say he is a positive member and he goes above and beyond.

I just think that a sentence of non-jail, or even if the Court were to consider some type of incarceration, to

P16LKasS

confine it to home confinement would serve the interests of justice and the factors under 3553(a) in this particular case, your Honor.  And that's what -- and I'm sorry that I wrote the last letter a couple of days ago.  I just got that information, but I thought it was important to your Honor in making an assessment today.

THE COURT:  That's perfectly fine.  I like to have all the information before me, so thank you.

Let me ask you a couple of more questions, Mr. Lazzaro, and let me tell you a little bit about what's troubling me.

So Mr. Kassim was sentenced in December of 2016 to four years of probation, given a chance to be on probation. And I am sure that he stood before a sentencing judge and said a lot of the same things that I am hearing here; won't happen again, very sorry, nonviolent crime, all of those things.  And then two years later, in January of 2019, before there is a pandemic, and while still on probation, he started the present offense, which then lasted for, I think, about four years.  So this doesn't sound to me like a mistake, a misstep, errant behavior.  It sounds like a continued pattern of illegal behavior for which a prior conviction and probation didn't seem to have any deterring effect.

So while I read those letters, and they were compelling to me, and I see the hard work that he has done both

P16LKasS

in the community and building up businesses, and all of that is commendable, which I am going to take into account, I am stuck with this continued illegal behavior, and the fact that it continued on, notwithstanding the fact that he was on probation.

Can you talk to me about that?

MR. LAZZARO:  I recognize what your Honor is concerned with, but if you look at what happened between his sister, you know, being left homeless with four children, the marshal coming and taking everything, and all these financial obligations, from taking care of his mother, taking her to the doctor, to his own family situation, I am not offering that as an excuse for why he did what he did, but it was a number of factors which made him make bad decisions.

I do believe that this is a wake-up call, even though I understand where your Honor is coming from.  Yeah, he had that chance there, and yet he is here again.  However, he was in a different position as far as all these factors coming into play at the same time, meaning his sister's family he is taking care of, his mother is coming down with cancer, he's got his own situation.  It was a number of factors.  It doesn't mean that I am offering it as an excuse, but I think it played a role here, Judge.

And I do believe that even if the Court wanted to offer some type of incarceration, it can be done through home

P16LKasS

confinement.  And I believe the fact that the two-year-old is going to go through a lot right now as far as with this diagnosis, to take him out of the home, I think, Judge, it just is not necessary to afford adequate deterrence.  I think it can accomplish its goal by giving home confinement if the Court wants to send a message to him.

THE COURT:  And then another question I have is, I understand that it would be disruptive, to say the least, to remove Mr. Kassim from the household, but this is one of those unique circumstances where -- and this is commendable for Mr. Kassim and his family -- there are resources available, you know.  I see savings accounts, a $2.3 million home, different businesses that are running.  So there are moneys and resources that can care for the family while he is away, which is unusual.  In some of my cases, I have people who they are the sole breadwinner, they are bringing in the day-to-day salary that comes in for the family members.

So you would agree that that's a bit of a different circumstance.  And I am not -- I would never suggest I would penalize him for the success there, but I am saying that the family will not be destitute should he be removed for a certain period of time.

MR. LAZZARO:  Financially, no, but from a -- the finances will never come into play with what the son needs right now, Judge.  That's the difference, Judge, and that's

what I would argue to you.  The fact that the son is going to need this type of help, medical help, in order to try and deal with this autism, that can't be replaced by money.

THE COURT:  Understood.

MR. LAZZARO:  And with him leaving the house, I think the detrimental effect would just be overwhelming.

THE COURT:  Understood.

I have a few more questions.  Thank you, Mr. Lazzaro.

All right.  One of the special conditions that is suggested by probation is that Mr. Kassim provide the probation officer during supervised release with access to any requested financial information, and not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule.  That seems appropriate to me under this type of a crime.

Is there any objection that you have to that special condition for supervised release?

MR. LAZZARO:  None, your Honor.

THE COURT:  OK.  The other question I have is, there is a recommendation for a $10,000 fine, which is on the very low end of the fine range, and he seems to have the ability to pay that.

Any objection to that?

MR. LAZZARO:  None.

P16LKasS

THE COURT:  And then we talked about restitution, forfeiture.

All right.  I think that's all I have, Mr. Lazzaro.

Mr. Kassim, you don't need to say anything, but if you would like to be heard, I am here to listen.  You can stand if you would like or you can sit; whatever you are most comfortable doing.  Just make sure that you have the microphone.

THE DEFENDANT:  Good afternoon, your Honor.

THE COURT:  Good afternoon.

THE DEFENDANT:  I want to thank you for letting me talk to you right now to explain to you what's going on.  I try to run a lot of businesses to support my kids and to put them in nice schools to learn to be doctors, lawyers.  So I do the best I can.  For sometime I opened a lot of businesses with almost 200 workers on me.  I lost control, especially when my mom got cancer, and then I left everything.  I stayed with my mom in the hospital in chemo, visiting every time, and I lost control.  And I am very sorry about this, and I feel shame I am here.  I am guilty, and I feel shame, and it is not right to be here the second time, and I know it.  But I am trying to do the best for my kids.  I help my wife with the school, for the homework, for doctor appointments.  Now I have my son, three years old, he has therapy five times a week, and I am trying to do the best I can.

P16LKasS

I don't want to do any wrong anymore, and I am very sorry to the government and to your Honor and to the DA, to everybody in the court, and God bless America.

THE COURT:  Thank you.  Thank you very much.

THE DEFENDANT:  Thank you.

THE COURT:  All right.  I just have one question for the government, actually.  Defendant has asked about home confinement, and I know that that was certainly not part of the guidelines range and not suggested by probation.

What's the government's view on that?

MS. DELLIGATTI:  Your Honor, the government's view is that it's not appropriate.  I appreciate that there are mitigating factors in this case.  I think, as your Honor highlighted in the statement of reasons that you gave just a moment ago, I think this is a case where, while the defendant's family relies on him tremendously, it is not a case where the family is lacking in resources, and so the government took that into consideration in determining that home confinement was not appropriate.

But I will say that the main reason why the government did not advocate for home confinement was really related to the defendant's past criminal history and the ongoing nature of this crime, the fact that it occurred over several years, at least two of which was when the defendant was on supervised release -- or probation, excuse me -- for the previous offense.

P16LKasS

And so I think there was a concern on the government's part that home confinement was not appropriate, given that there is, I think, some legitimate risk here of specific -- of the need for specific deterrence, and also, I think, the need for a more specific punishment, given the defendant's history and his actions vis-a-vis what leniency the Court has shown him in the past.

THE COURT:  And you are seeking a guideline sentence then?

MS. DELLIGATTI:  Yes, your Honor.

THE COURT:  OK.  Thank you very much.

All right.  Imposing a sentence is one of the most important things that I do as a judge, and I take that responsibility very seriously.  And I know there are a lot of numbers being thrown about, guidelines ranges, 30 to 37 months, a lot of things being tossed about, but I do understand that any day of incarceration that I impose is significant.  It is taking away someone's liberty.

And so what I would like to do is to just take a few minutes to look through what I have heard, digest a little bit. And I know it is hard to wait for a moment, but it is important for me to take the time that I need to just look through things, think about what I have heard from Mr. Kassim, and then I will come back to you with my sentence, all right.  So just give me a few minutes, and we will stand adjourned for just a

P16LKasS

few minutes.  Thank you.

(Recess)

THE COURT:  Please be seated.

As I mentioned previously, under 18 U.S.C. 3553, the Court is required to consider the nature and circumstances of the offense, and the history and the characteristics of Mr. Kassim.  I must also impose a sentence that is reasonable and no greater than necessary to accomplish the goals of sentencing, which include the need to reflect the seriousness of the offense, the need to promote respect for the law, the need to provide just punishment for the offense while avoiding unwarranted sentencing disparities among similarly situated defendants, to deter criminal conduct, and to protect the public, as well as to provide Mr. Kassim with needed education or vocational training, medical care, or other correctional treatment.

I have considered all of the sentencing factors as well as the guidelines range, which is an advisory range.  Some of my considerations include the following:

Mr. Kassim is a relatively young man, 37 years old. He was raised by loving parents in a middle class household in Yemen, came to America and worked hard to build a life here. He had a high school education and does not have a history of mental illness or substance abuse.  And he has done a lot in those 37 years to be proud of.  He built up several businesses,

P16LKasS

contributed to his community through funding and volunteer work. His wife describes him working double shifts. I have no doubt he must be working hard to maintain eight delis with two more under construction, as well as owning a tobacco shop. His constant employment and work ethic is a mitigating factor here.

He is married and cares for his four young children, all under 11 years old. His wife depends on him. And he also cares for his parents who live with him and have had and continue to have significant health issues. I took that all into consideration. It's all very laudable, his behavior there.

Now, while many people depend on him, Mr. Kassim and his family do have significant financial resources, such as a $2.3 million home, and savings accounts, and they are running businesses that can sustain income for a family, which is unlike other instances where incarceration would result in the loss of all income for the family. I certainly take into account that loss of the support and partnership and child care involvement that would occur if Mr. Kassim were incarcerated, but I also am cognizant that he committed this crime while he had children and family responsibilities, such that he knew what he was risking by committing illegal activities at that time. I took into account all of the family and community member letters. Mr. Kassim certainly has a good support network and is a contributing member of the community.

P16LKasS

I saw how he helped family members who came to this country, his sister and her family, when she was in dire need, and other actions that he took in service of others. I was especially moved by the letters from police officers who attested to how he has assisted them in keeping the neighborhood safe, and the respect that they have felt from him. That is important and shows his respect for the law, at least in that regard.

In terms of the crime here, it is a serious crime, given the amount of money at issue; not the most serious of crimes that I see here before me, but a serious one. The seriousness of the crime is mitigated a bit by the fact that Mr. Kassim is agreeing to pay a significant amount in restitution as well as forfeiture and a fine, and given his resources, this is real money that will be paid, and I believe he is trying to make things right.

I also think that protecting the public counsels in favor of a more reduced sentence because this is a nonviolent offense, and while he did steal from the government by permitting people to use their food stamps for unauthorized purchases and for cash, he is paying restitution for the amounts that he took as well as forfeiture and fines. It is certainly wrong and illegal activity, and Mr. Kassim personally stole money intended for food items by skimming money from the top as a commission for giving people cash, and so that must be

P16LKasS

punished, and will be.  But I do not believe that a lengthy sentence is necessary to protect the public from Mr. Kassim.

In terms of respect for the law, I note a bit of a paradox here, and I talked about it a little bit earlier.  I see Mr. Kassim's respect for the law in terms of law enforcement assistance, in keeping the neighborhood safe, cooperating with police.  The letters from the police, as I said, were meaningful to me.  I also see that he's been compliant on pretrial release.

But then, on the other hand, I see Mr. Kassim committing this crime while he is on probation.  And I also am very troubled by the lengths that were taken by Mr. Kassim to cover up his ownership in the deli and divert attention from himself by enlisting the assistance of a homeless person as a supposed owner of the business, and that brings me to deterrence, which is a big issue here.

General deterrence is important because people do need to see that this type of crime is one that will be punished.  The rules are there for a reason, and flouting them is against the law.  But more importantly, I am concerned with specific deterrence.  I am very troubled that this crime was committed while Mr. Kassim was on probation after he presumably, as I said before, told a sentencing judge like me that he was sorry, wouldn't commit further crimes, there was a mistake.  I don't know what was said, but I can imagine that it was something

P16LKasS

compelling so that he could receive probation instead of a sentence of up to five years. He received a chance with a probationary sentence, and then, while still on probation, about two years into his four-year probation sentence, he starts committing the instant offense which continues for about four years; a long time.

As I said before, this does not seem like a mistake or a fluke. It seems like deliberate illegal behavior to steal money when, frankly, his circumstances were not dire, and he could have and should have been abiding by the law in running his businesses. And that is the biggest sticking point for me.

I also considered what would be a just punishment here, and avoiding unwarranted disparities, and I looked at the national data that's provided to me under JSIN. And I see that people who received jail time with similar guidelines profiles received about 20 to 24 months in prison. The government is seeking more than that. They are seeking a guideline sentence of 30 to 37 months in prison.

There are several mitigating factors here that I have just discussed, and for that reason, I do believe that varying below the guidelines range here of 30 to 37 months is appropriate, so I will go below the guidelines range. But I am also having trouble with Defendant's request for a sentence of probation or even home confinement. He has a prior conviction for which he received probation, and committed the crime while

P16LKasS

on probation.  This was a long-term crime for which he stole almost a million dollars from the government.  This is a program that is intended to provide aid to people who need it, important aid to families and people who need the food stamps. It is not intended to provide cash to Mr. Kassim.  And if he wasn't caught, it would have lasted longer than the four years that it did, I believe.  And the deliberateness in which Mr. Kassim committed the crime and tried to conceal his ownership of the deli is troubling and shows that this is not just errant behavior.

So I am now going to state the sentence I intend to impose, and the attorneys will have a final opportunity to make legal objections before the sentence is finally imposed.

Based on my consideration of the sentencing factors and the sentencing guidelines, I find that a sentence of custody in the Bureau of Prisons for a term of one year and one day is sufficient but not greater than necessary to achieve the goals of sentencing.  This is a sentence outside of the advisory guidelines range, and I am varying downward based on the factors I discussed previously.

After release from imprisonment, Mr. Kassim is to be placed on supervised release for a term of two years.  He shall be subject to the mandatory conditions of supervised release that are set forth on page 27 of the presentence report.

Those conditions are that he shall not commit another

P16LKasS

federal, state, or local crime; not unlawfully possess a controlled substance.  He must refrain from any unlawful use of a controlled substance.  He must submit to one drug test within 15 days of release from imprisonment, and at least two periodic drug tests thereafter, as determined by the Court.

He must cooperate in the collection of DNA as directed by the probation officer.

And he must make restitution in accordance with 18 U.S.C. Sections 2248, 2259, 2264, 2327, 3663, 3663A, and 3664.

He must also comply with the standard conditions of supervised release, and I will impose them exactly as written on page 28 and 29 of the presentence report.

Mr. Lazzaro, would your client like me to read all of the standard conditions, or would he waive that reading?

MR. LAZZARO:  He will waive.

THE COURT:  Thank you.

Mr. Kassim will also be subject to the following special conditions of supervised release:

He must provide the probation officer with access to any requested financial information.  He must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule.

And if he is sentenced to any period of supervision,

P16LKasS

it's recommended that he be supervised by the district of residence.

I understand that he does not object to any of those special conditions of supervised release, as we discussed here today, and I also find that they are appropriate.

Providing requested financial information and not incurring new credit charges or lines of credit without probation's approval is justified because restitution is owed here, and the conditions will assist in ensuring that it is paid.  The offense also was facilitated by bank accounts and was a financial crime, such that these conditions will ensure that Mr. Kassim does not engage in the behavior again, decreasing the risk of recidivism, and protecting the public from future criminal behavior like this.

The Court orders that Mr. Kassim pay a fine of $10,000, to be paid no later than one month after sentencing.

In terms of restitution, the defendant must make restitution of $951,915.21 to the United States Food and Nutrition Services.  I understand there is an agreement to restitution in that amount, and a consent order of restitution was provided to me, but I will be receiving either an amended consent order of restitution or the resubmission of this consent order of restitution after a few things are followed up on by the government, but I am ordering that amount of restitution.  It is not joint and several with others, and it

P16LKasS

will be paid in installments.

If Mr. Kassim's financial conditions change materially, he must contact the probation department, as stated in the PSR on page 31.

I am also awarding forfeiture in the amount of $951,915.21, which represents the amount of proceeds traceable to the commission of the offense.  Mr. Kassim agreed to this in the plea agreement as well as the consent preliminary order of forfeiture and money judgment, and I have signed that consent order and will provide it back.

I am also imposing a $100 special assessment that's due immediately.

Ms. Delligatti, do you know any legal reason why the sentence should not be imposed as I have now stated it?

MS. DELLIGATTI:  No, your Honor.

THE COURT:  Mr. Lazzaro, do you know any legal reason why the sentence that I have just described should not be imposed as I have stated it?

MR. LAZZARO:  No, your Honor.

We ask that you recommend Morgantown, West Virginia Camp as part of your order.

THE COURT:  Give me one moment.

So first let me order that the sentence be imposed as I have stated it.

And in terms of a designation, you are asking for

P16LKasS

where, Mr. Lazzaro?

MR. LAZZARO:  Morgantown, West Virginia Camp.

THE COURT:  And what's the reason for that particular request?

MR. LAZZARO:  He has the ability to have the family come and visit, and it's just a better facility for families.

THE COURT:  OK.  It's just a little bit farther, though, for his family to go.

MR. LAZZARO:  But it's better to bring the children.

THE COURT:  All right.  Any objection to that, Ms. Delligatti?

MS. DELLIGATTI:  No, your Honor.

THE COURT:  OK.  I will recommend -- it's called Morgantown?

MR. LAZZARO:  West Virginia Camp.

THE COURT:  OK.  I will recommend that.  Obviously, I do not have final say in that.  The Bureau of Prisons decides where Mr. Kassim will be designated.  I can make recommendations, but they make that final determination.  So I will make that recommendation.

And in terms of next steps, I presume Mr. Kassim is seeking voluntary surrender.  Is that correct, Mr. Lazzaro?

MR. LAZZARO:  Yes, your Honor.  We would ask for two months.

THE COURT:  Ms. Delligatti, what's your position on

P16LKasS

that?

MR. LAZZARO:  Can I ask for three months, Judge?
Apparently Ramadan --

THE COURT:  One moment.  Forty-five days is the norm.
So you are asking for how long?

MR. LAZZARO:  Ninety.

THE COURT:  Let me hear from the government.  What's
your position on voluntary surrender and the timeline?

MS. DELLIGATTI:  Your Honor, I don't know when Ramadan
is occurring, but assuming that's correct, the government has
no objection.

THE COURT:  Oh, this is because Ramadan is happening
at a certain time?  Oh, absolutely.  That's fine.

All right.  If the government has no objection to
voluntary surrender, I find that it is appropriate as well.
And the release conditions that are previously established will
continue to apply.

So I will order that Defendant will surrender to the
U.S. Marshal in this district by 2:00 p.m. on -- let me get the
date 90 days out -- April 7.

Will Ramadan be concluded by then?

THE DEFENDANT:  Yes.

MR. LAZZARO:  Yes.

THE COURT:  All right.  We will do April 7.

Are there any open counts, Ms. Delligatti?

P16LKasS

MS. DELLIGATTI:  There are, your Honor.  The government moves to dismiss them.

THE COURT:  All open counts are dismissed.

To the extent, Mr. Kassim, you have not given up your right to appeal the sentence through your plea of guilty and the agreement you entered into with the government in connection with that plea, you have the right to appeal your sentence.  If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis.  You may also apply for court-appointed counsel.  The notice of appeal must be filed within 14 days of the judgment of conviction.

Are there any other objections or issues that I need to address here today, Ms.  Delligatti?

MS. DELLIGATTI:  No, your Honor.

THE COURT:  Any other objections or issues that I need to address here today, Mr. Lazzaro?

MR. LAZZARO:  No, your Honor.

THE COURT:  All right.  Before we conclude, Mr. Kassim, you came to this country to make a good life for you -- you may sit; I just wanted to say a few things before you leave -- to make a good life for you and for your family. You obviously have a very strong support network of family and friends.  You have done some very good things here.  And I thought about this sentence for a very long time.  It was one of the harder ones that I have had to impose.  And a year of

P16LKasS

incarceration, a year and a day, is hard, but it was necessary, in my view.  And hopefully this will be a wake-up call that criminal behavior is not tolerated, but then you can put that behind you and continue to work toward continued success that you have had here.  And it is my sincere hope that this is the very last time that you will come into contact with the criminal justice system.  I think you are better than that, and I think that this is the last time that we will be seeing you.

So thank you very much, and court is adjourned.

THE DEFENDANT:  Thank you very much.

(Adjourned)